DONALDSON v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. October 6, 1913.)

No. 2,248.

**1. WITNESSES (§ 286*)—EXAMINATION—REDIRECT—SCOPE.**

In a prosecution for conspiracy for unlawfully facilitating the transportation and concealment, after importation, of opium into the United States, P., who had been convicted of complicity in removing the opium from a vessel in San Francisco harbor, testified that he had been approached by accused and induced to aid in disposing of the opium; that he and two others removed the same as directed; and that F., who was one of them, had been sentenced to imprisonment for such offense. On cross-examination P. was asked when he first spoke to any one concerning defendant's complicity in the matter and answered that it was after he had gotten out of jail, when he told a special agent of the Treasury Department the story he had told in court, and that such agent had recommended his appointment as a special customs' agent and had gotten him employment as such. *Held*, that the government on redirect examination was properly permitted to ask him whether such special agent ever spoke to witness about the matter until he sent for him after he seized certain letters which disclosed defendant's connection with the matter, and whether it was only after such agent had positive information from such letters relating to defendant that he sent for witness, in order to rebut the inference that witness had told the government's agent his story in order to gain favor and get employment.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 930, 994–999; Dec. Dig. § 286.*]

**2. CRIMINAL LAW (§ 1037*)—REVIEW—REMARKS OF DISTRICT ATTORNEY—NECESSITY OF EXCEPTION.**

Alleged prejudicial remarks of the district attorney to the jury cannot be reviewed where no objection was taken thereto, no ruling demanded, and no assignment of error predicated thereon.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1691, 2645; Dec. Dig. § 1037.*]

**3. CONSPIRACY (§ 27*)—IMPORTATION OF OPIUM—OVERT ACTS.**

An indictment for conspiracy to aid the transportation and concealment, after importation, of certain opium imported contrary to law charged that accused approached P. and requested him to aid in landing the opium; that he introduced P. to the boatswain and engineer's cabin boy on the steamship where the opium was; and, in furtherance of the conspiracy and to effect and accomplish the object thereof, two of the conspirators other than defendant went from San Francisco to Oakland. *Held*, that such acts were not mere parts of the formation of the conspiracy but were overt acts tending to effect the object thereof, and it was therefore sufficient if any one of them were proven.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 38, 39; Dec. Dig. § 27.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4. Criminal Law** (§ 1059*)—Trial—Instructions—Exceptions—Effect.

A general exception to the whole charge, many portions of which are unquestionably correct, does not authorize a review of any particular error therein and will not avail the party taking it.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2671; Dec. Dig. § 1059.*]

In Error to the District Court of the United States for the First Division of the Northern District of California; John J. De Haven, Judge.

Robert Donaldson was convicted of conspiracy and participation in unlawfully receiving and facilitating the transportation and concealment, after importation, of certain opium imported into the United States contrary to law, and he brings error. Affirmed.

Frank R. Sweasey, of San Francisco, Cal., for plaintiff in error.

John L. McNab, U. S. Atty., and Benjamin L. McKinley, Asst. U. S. Atty., both of San Francisco, Cal.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge. The plaintiff in error was convicted on two counts of an indictment charging him and one Henry Gallagher with a conspiracy, as well as with the actual participation in the act of unlawfully receiving, concealing, and facilitating the transportation and concealment, after importation, of certain opium known by them to have been imported into the United States contrary to law.

It is assigned as error that the trial court overruled the objection of the plaintiff in error to questions propounded to the witness Powers by the district attorney as follows:

"Q. Mr. Tidwell never spoke to you about this matter until he sent for you after he seized these letters that had gone out from the jail which disclosed Mr. Donaldson's connection, did he? (Question objected to on the grounds that it is immaterial and irrelevant, not redirect, is leading, and is based on something that is not in evidence; there is nothing here about letters being seized. Objection overruled and exception.) A. No, sir. Q. And it was only after he had this positive information in these letters relating to Mr. Donaldson and Mr. Gallagher that he ever sent for you at all? (Question objected to on the same grounds. Objection overruled and exception.) A. Yes, sir."

To understand the relevancy of this testimony, it is necessary to review briefly the evidence in the case. Powers, who was testifying at the time, had been indicted and convicted and had served his sentence in jail for his complicity in removing the opium which it was charged that the plaintiff in error had conspired with Gallagher to import unlawfully. He testified that the plaintiff in error approached him and finally induced him to lend his aid in disposing of opium which was then on board the steamship Siberia in the San Francisco harbor, and that thereafter the plaintiff in error took him to the Siberia and introduced him to Yung Tai, a Chinaman, the chief boatswain of the Siberia. He testified to conversations between the parties on that occasion in regard to getting the opium off the vessel; that the plaintiff in error told him where the opium was to go; that he (the witness), and Gallagher and one Fiedler, who was also in the scheme, thereafter

removed the opium as directed; and that for that offense he and Fiedler were sentenced to imprisonment in the county jail. Fiedler testified substantially to the same effect, except that he had no acquaintance or conversation with Donaldson, and that his only knowledge of Donaldson's participation in the conspiracy was through information which he received from Powers and information received from Yung Tai, who asked, "Is Donaldson all right?" Yung Tai testified that Donaldson came to the ship with Powers; that Donaldson told him that Powers was a good man and told him to give him the opium. It is true that Yung Tai testified that he had no opium at that time to give him, and that, when Powers and Fiedler came back afterwards for opium, he told them he had no opium to give them. His reticence as to his possession of opium was probably induced by the fact that at the time when he testified he was under indictment for his participation in the transaction. Now, Mr. Powers, when called to the stand on behalf of the government, gave the following testimony:

"Q. I understand certain letters were written by Mr. Fiedler in jail? A. Yes, sir. Q. That is the way in which your connection with these people was learned? A. Yes, sir."

[1] It seems that certain letters were written by Fiedler in which Powers and the plaintiff in error were mentioned in connection with the transaction in opium, which letters had been intercepted by the authorities. On cross-examination Powers was asked when he first spoke to any one about Donaldson's complicity in this matter. His answer was that after he had got out of jail he had told Mr. Tidwell, special agent of the Treasury Department; that he had told him the same story which he told in court. He further testified on cross-examination that Mr. Tidwell had recommended his appointment as special customs agent and had given him employment as such. The inference evidently sought to be drawn from such testimony so elicited on the cross-examination was that Powers had told Mr. Tidwell his story in order to gain favor and get employment from the government. It was to explain the matter and to rebut this inference that the questions were propounded which form the basis of the assignment of error. The purpose was to show on redirect examination that Powers' story of the transaction had been elicited only after he had discovered that Mr. Tidwell, through the letters of Fiedler, had already obtained the information that he and Donaldson were both implicated. There was no error, therefore, in bringing out the fact that Mr. Tidwell did not offer employment to Powers until after he had seized the letters and read the contents thereof. The contents of the letters were not proven, and, if Fiedler had not testified in the case as to the full extent of his knowledge of the participation of the plaintiff in error in the conspiracy, it might justly be claimed that there was error in admitting testimony that letters had been written by Fiedler containing positive information relating to the plaintiff in error in connection with the offense charged. But in his testimony Fiedler disclosed the full extent of his knowledge of Donaldson's complicity in the conspiracy, and it will not be presumed that the jury could have inferred that the letters contained anything more or different.

[2] It is argued that the plaintiff in error was prejudiced by certain remarks of the district attorney to the jury concerning the letters, and the purport of them, but no exception was taken to the remarks, and no ruling of the court demanded thereon, and no assignment of error is predicated upon the same.

[3] Error is assigned to the refusal of the court to give to the jury certain instructions requested by the plaintiff in error. It was requested that the jury be instructed that they could not convict unless, to carry out the conspiracy charged, one of the overt acts charged was committed as therein stated, and further in that connection that no overt act charged or proven could be held sufficient to establish the offense charged, unless the jury should first have found that the act was committed subsequent to the complete formation of the conspiracy, and that it was in furtherance of a fully completed conspiracy, not a part of it. The overt acts charged in the indictment were in substance: First, that the plaintiff in error approached Powers and requested him to aid and assist in unlawfully landing from the steamship Siberia 600 cans of opium. Second, that the plaintiff in error introduced Powers to the boatswain and the engineer's cabin boy on the steamship Siberia. Third, that in furtherance of the conspiracy and combination, and to effect and accomplish the object thereof, Gallagher on December 13, 1911, went with Powers from San Francisco to Oakland. It is urged that these acts were but part and parcel of the formation of the conspiracy. We think they were more. Before any of them were performed, the general conspiracy had been entered into, and Powers had agreed to carry out his part thereof. Thereafter the plaintiff in error performed the overt act of requesting Powers to aid in unloading certain specified opium then in the harbor on the steamship Siberia, and he took him to the steamer and introduced him to the Chinaman who had the opium in charge. Thereafter Gallagher went with Powers from San Francisco to Oakland to accomplish the object of the conspiracy. These were acts which tended to effect the object of the conspiracy, and it was enough if one of the acts charged was proven to have been done.

[4] The court fully and at length instructed the jury on all questions of law applicable to the case. At the close of the charge, counsel for the plaintiff in error reserved a general exception to the instructions so given. Upon consideration of the whole charge, we find no error therein. But, even if there were error, we would not be justified in considering it in view of the nature of the exception which was taken. A general exception to the whole charge, many portions of which are unquestionably correct, does not direct the attention of the court to any particular error therein and will not avail the party who takes it.

We find no error. The judgment is affirmed.